IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-01827-PAB

JESSE BARAJAS,

      Applicant,

v.

FRANCIS FALK, Warden, L.C.F., and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON APPLICATION FOR A WRIT OF HABEAS CORPUS

---

Applicant, Jesse Barajas, a state prisoner in the custody of the Colorado

Department of Corrections, currently is incarcerated at the Limon Correctional Facility in

Limon, Colorado.  Applicant initiated this action by filing *pro se* an Application for a Writ

of Habeas Corpus Pursuant to 28 U.S.C. § 2254, in which he challenges the validity of

his conviction and sentence in the District Court for the City and County of Denver,

Colorado, Case No. 03CR2922.  He filed an Amended Application on July 18, 2014.

Docket No. 8.  Respondents filed an Answer on August 21, 2014, Docket No. 19, and

the State Court records on August 25, 2014.  Docket No. 20.  Applicant filed a Reply to

the Answer on September 25, 2014.  Docket No. 23.

The Court must construe the Application liberally because Applicant is not

represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall

v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court does not

"assume the role of advocate for the *pro se* litigant."  *See Hall*, 935 F.2d at 1110.  After

reviewing the pertinent portions of the record in this case, including the Application, the

Answer, the Reply, and the state court record, the Court concludes that the Application

should be denied.

## I.  RELEVANT FACTUAL AND PROCEDURAL HISTORY

On July 8, 2003, the Denver District Attorneys Office charged Jesse Barajas in

Case Number 03CR2922 with robbery.  A count of third degree assault was added on

July 22, 2003.  Then, on July 11, 2003, Applicant was charged by Information in Case

Number 03CR2921 with one count of theft over $500 from an at-risk adult.  He was also

charged in Case Number 03CR2923 with one count each of theft from the person and

first degree aggravated motor vehicle theft.  Six counts of habitual criminal were later

added.  These cases were subsequently consolidated for jury trial, which was held on

August 16-19, 2004.

The prosecution's evidence in this case involved a woman who committed three

purse snatchings.  With respect to each incident, the prosecution proceeded against

Mr. Barajas under a complicity theory, alleging that he drove the "get away car."  In the

first case, the prosecution presented evidence that a woman stole Kathryn Thompson's

purse out of her grocery cart at an Albertson's grocery store on July 1, 2003.  Ms.

Thompson saw the woman get into a minivan and drive away.  However, because the

wind was blowing Ms. Thompson's hair in her face, she was unable to get a good look

at the woman.  Mr. Barajas was acquitted of this conduct.

In the second case, the prosecution presented evidence that a woman took

Charlotte Gray's purse out of her shopping cart on July 2, 2003.  Ms. Gray saw the

woman running away with her purse and watched as she jumped into a van driven by a

Hispanic man.  Ms. Gray was shown a photographic lineup, but was not able to make any identification.  With respect to the third purse snatching case, the State presented testimony from Dorothy Cramer that she was in a Wal-Mart parking lot on the afternoon of July 2, 2003 pushing her shopping cart to her car.  According to Ms. Cramer, she set her purse down in her cart and began looking for her car keys when she felt someone tugging at her purse.  Ms. Cramer saw a woman next to her pulling on her purse, who she described as "one tough broad."  The purse strap eventually broke, at which point the woman took the purse and ran around the back of a van.  The woman threw Ms. Cramer's purse into the driver's window.  Ms. Cramer reached into the van and tried to grab the purse.  The driver then opened the door, which had the effect of slamming it into Ms. Cramer.  Ms. Cramer identified Mr. Barajas as the driver of the van.

Around 3:00 p.m. on July 3, 2003, Lakewood police officer Daniel Garcia located a van which matched the description of one that had been involved in the purse thefts. Garcia observed two men and a woman in the vehicle and attempted to stop it, but the van got away.  Garcia identified Mr. Barajas as the driver of the van.  The van was later located and the area was searched for parties matching the descriptions of the three occupants of the van Garcia had seen.  Ultimately, police detained three individuals, one of whom was Mr. Barajas.  The woman detained by the police was carrying two purses; other items associated with the thefts were found under a boat near where the arrests were made.  The woman who committed the thefts was identified as Elizabeth Fresquez.

At trial, Ms. Fresquez explained that she had asked Mr. Barajas to drive her to various stores because she had been using drugs and was unable to drive herself.  She

stated that it was her idea to steal the purses and that she had not talked to Mr. Barajas about it before she did it.

On August 19, 2004, the jury found Mr. Barajas not guilty of theft from the person and first degree aggravated motor vehicle theft, but returned guilty verdicts on the charges of theft from an at-risk adult, robbery, and third degree assault involving Charlotte Gray and Dorothy Cramer.   On July 13, 2005, the judge found Mr. Barajas to be a habitual criminal and sentenced him to consecutive terms of 24 years on the felony counts and to a concurrent term of two years jail on the misdemeanor conviction. The court ordered the sentences to run consecutively to the sentences imposed in 05CR1854 for a cumulative sentence of 224 years.[1]

Applicant filed a direct appeal to the Colorado Court of Appeals ("CCA") raising the following claims: 1) insufficient evidence of theft from a person; 2) insufficient evidence of robbery; 3) erroneous jury instruction on complicity; 4) insufficient evidence of habitual criminal; and 5) disproportionate sentence.  Docket No. 11-2.  The CCA affirmed his conviction in *People v. Barajas,* Colo. App. No. 05CA1853 (August 21, 2008) (unpublished) ("*Barajas I*").  Docket No. 11-4.  He filed a petition for certiorari in the Colorado Supreme Court ("CSC") (Docket No. 11-5), which was denied on January 5, 2009.  Docket No. 11-6.

Subsequently, Mr. Barajas filed a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure, alleging that his trial counsel was ineffective by failing to object to the complicity instruction and by failing to object to trying the

---

[1] See Applicant's Opening Brief on direct appeal (Docket No. 11-2 at 8-12).

habitual criminal charges to the court instead of a jury.  After the district court denied

the motion, Applicant appealed and, on February 14, 2013, the CCA affirmed the lower

court.  *People v. Barajas*, Colo. App. No. 10CA1776 (Feb. 14, 2013) (unpublished)

("*Barajas II*").  Docket No. 11-10.  Applicant's petition for certiorari was denied by the

CSC on September 16, 2013.  Docket No. 11-12.

Applicant filed the instant action on July 1, 2014, wherein he raised the following

claims:

1. Whether the evidence was insufficient to convict him of robbery and to adjudicate him as an habitual criminal.

2. Whether the state trial court violated Barajas' Fourteenth Amendment due process rights when it gave the jury an instruction regarding complicity that erroneously instructed the jury to convict Barajas if it believed he committed "all or part of" the offense.

3. Whether trial counsel's failure to object to the erroneous complicity instruction constituted ineffective assistance.

4. Whether trial counsel's failure to request a jury trial on the habitual counts as required by United States Supreme Court precedent constituted ineffective assistance.

On August 21, 2014, Respondents filed an Answer on the merits.  Docket No.

19.  Applicant filed a Reply on September 25, 2014.  Docket No. 23.  The Application is

ripe for review by this Court.

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be

issued with respect to any claim that was adjudicated on the merits in state court unless

the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Mr. Barajas bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (*per curiam*).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Barajas seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).  If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

6

A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 562 U.S. at 101 (internal quotation marks omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have

supported[] the state court's decision" and then "ask whether it is possible fairminded

jurists could disagree that those arguments or theories are inconsistent with the holding

in a prior decision of [the Supreme] Court." *Id*. In addition, "review under § 2254(d)(1)

is limited to the record that was before the state court that adjudicated the claim on the

merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 562 U.S. at 102 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> . . . As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being presented
> in federal court was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any possibility for
> fairminded disagreement.

*Richter*,  562 U.S. at 103.

This deference was explained in *Renico v. Lett*, 599 U.S. 766 (2010), where the

Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of

habeas corpus to a defendant who was retried for murder following the trial judge's

grant of a mistrial after the jury had deliberated for at least four hours following a

relatively short, and far from complex, trial.  The Michigan Supreme Court had

concluded there was no violation of the Double Jeopardy Clause because the trial court

exercised its sound discretion.  The federal district court granted a writ of habeas

corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of

a mistrial constituted an abuse of discretion because there was no manifest necessity.

The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law." § 2254(d)(1).

*Lett*, 559 U.S. at 772-73. The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision-or, for that matter, the trial judge's declaration of a mistrial-was right or wrong. The latter question, in particular, is a close one. As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial. The Michigan Supreme Court declined to accept this confession of error, and in any event-for the reasons we have explained—**whether the trial judge was right or wrong is not the pertinent question under AEDPA**.

*Id*. at 778, n. 3 (emphasis added) (internal citation omitted). *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

In making this determination, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir.

2000).  In determining what implicit factual findings a state court made in reaching a

conclusion, a federal court must infer that the state court applied federal law correctly.

*Marshall v. Lonberger*, 459 U.S. 422, 433 (1982).  "The standard is demanding but not

insatiable . . . [because] '[d]eference does not by definition preclude relief.'"  *Miller-El v.*

*Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340

(2003)).

For federal habeas claims not adjudicated on the merits in state-court

proceedings, the Court must exercise its independent judgment.  *McCracken v. Gibson*,

268 F.3d 970, 975 (10th Cir. 2001).  Any state-court findings of fact that bear upon the

claim are entitled to a presumption of correctness rebuttable only by clear and

convincing evidence.  *Hooks v. Ward*, 184 F.3d 1206, 1223 (10th Cir. 1999) (applying

§ 2254(e)(1)'s presumption of correctness to state-court factual findings bearing upon

the claim, even though the claim was not adjudicated on the merits by the state court).

## III.  MERITS OF APPLICANT'S CLAIMS

### A.  Insufficient Evidence

In his first claim, Petitioner asserts that the evidence was insufficient to support

his convictions.  Where a petitioner challenges his incarceration on the ground that the

evidence was insufficient to support his conviction, "the relevant question is whether,

after viewing the evidence in the light most favorable to the prosecution, any rational

trier of fact could have found the essential elements of the crime beyond a reasonable

doubt."  *Jackson v. Virginia*, 443 U.S. 307 (1979).  Under this standard, "a federal

habeas corpus court faced with a record of historical facts that supports conflicting

10

inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.  A federal court must apply this standard with explicit reference to the substantive elements of the criminal offense as defined by state law. *Id*. at 324 n. 16.  The jury, however, weighs the evidence and the federal courts must defer to the jury's resolution of conflicts in the evidence.  *Id*. at 326.  Moreover, when a state appellate court thoroughly reviews the sufficiency of evidence, that court's determination is entitled to great weight.  *Parke v. Raley*, 506 U.S. 20, 36 (1993).  This deferential test places a very heavy burden on the appellant.

The individual states define the elements of state offenses.  *Patterson v. New York*, 432 U.S. 197, 201 (1977) ("It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government . . . and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States").  A federal court is bound by a state court's construction of a state statute.  *Wisconsin v. Mitchell*, 508 U.S. 476 (1993); *Schad v. Arizona*, 501 U.S. 624, 636 (1991) (federal courts are not free to substitute their own interpretations of state statutes for those of a State's courts).

In its review of his theft and robbery convictions on direct appeal, the Colorado Court of Appeals held as follows:

### I. Theft from At-Risk Adult

Defendant contends that the evidence was insufficient to support his conviction for theft from an at-risk adult because the prosecution failed to prove that the victim's purse was taken from her person.  We disagree.

11

When assessing the sufficiency of evidence, a reviewing court must determine whether the evidence, viewed in the light most favorable to the prosecution, is sufficient to support a rational conclusion that the defendant is guilty of the crime charged beyond a reasonable doubt.  The weight and credibility of the evidence is entrusted to the judgment of the jurors. However, a verdict in a criminal case may not be based on speculation or conjecture.

As pertinent here, a person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization and intends to deprive the other person permanently of the use or benefit of the thing of value.  § 18-4-401(1)(a), C.R.S. 2007.  If the theft is from the person of another by means other than the use of force, threat, or intimidation, it is a class five felony without regard to the value of the thing taken.  § 18-4-401(5).  If the theft is from the person of an at-risk adult, it is a class four felony without regard to the value of the thing taken.  § 18-6.5-103(5), C.R.S. 2007.  Theft from the person is a crime that would otherwise constitute robbery, but for the lack of force, threats, or intimidation.

In *People v. Smith*, 121 P.3d 243, 247-48 (Colo. App. 2005), the victim's fanny pack was stolen from her shopping cart when she was a substantial distance away from the cart.  A division of this court stated that a taking from a shopping cart is a taking from the person if the victim is holding, pushing, or otherwise in control of the cart at the time of the theft. The division held that because the victim was a substantial distance from the cart, the evidence was insufficient to establish theft from a person.

Defendant asserts that the prosecution did not produce evidence to prove that the theft was from the victim's person.  However, the victim testified that she was leaning on the cart with her hands over the cart's handle.  Viewed in the light most favorable to the prosecution, this evidence is sufficient to warrant a reasonable person to conclude that the victim was holding or otherwise in control of the shopping cart from which the purse was stolen.  Accordingly, we conclude there was sufficient evidence to support defendant's conviction.

II.  Knowledge

Defendant contends that there was insufficient evidence to support his convictions for robbery and theft from an at-risk adult because the prosecution failed to prove that he had knowledge of the principal's intent to commit the crimes.  We disagree.

Here, the jury was correctly instructed that defendant must have had knowledge that the principal intended to commit a crime. Defendant asserts that there was no evidence presented to suggest he knew that his cohort had stolen a purse when she got back into the van in the first offense. He asserts that her testimony that she did not tell him about her intent to commit the second offense shows that the evidence is insufficient as to to that charge.

However, there was direct and circumstantial evidence that defendant's cohort committed the crimes, that defendant was in the driver's seat of the van when she did so, that defendant was in a position to see her commit the crimes, that defendant told her to hurry during the first theft, that the cohort threw the second purse into the driver's window, that defendant slammed the car door into the second victim, and that he drove away at a high rate of speed on both occasions. Viewed in the light most favorable to the prosecution, this evidence is sufficient to support a reasonable conclusion that defendant knew that his cohort intended to commit the offenses in question. Accordingly, we reject his contention.

*Barajas I*, at 2-5 (some citations omitted) (Docket No. 11-4. at 4-7).

For purposes of the pending Application,  must decide whether the CCA's application of *Jackson* was "objectively unreasonable."  Under Colorado law, a person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization and intends to deprive the other person permanently of the use or benefit of the thing of value.  Colo. Rev. Stat. § 18-4-401(1)(a).  A person who knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation commits robbery.  Colo. Rev. Stat. § 18-4-301(1).

Here, Applicant argues that there was no evidence to show that he had any knowledge that Ms. Fresquez intended to commit the offenses.  Docket No. 23 at 6.  He is wrong.  Under Colorado law, intent or knowledge is the state of mind that exists at the time a person commits an offense and it need not be proved by direct substantive evidence.  *Garcia v. People*, 473 P.2d 169, 170 (Colo. 1970).  Rather, the mind of an alleged offender may be inferred from his or her conduct and the reasonable inferences

that may be drawn from the circumstances of the case.  *Id*.  *See also People v. Dist. Court*, 779 P.2d 385, 388 (Colo. 1989) (evidence regarding a criminal defendant's state of mind need not be direct; the fact finder may infer an intent to cause the natural and probable consequences of unlawful voluntary acts).  Moreover, the Court must "accept the jury's resolution of conflicting evidence . . . .  As long as the possible inferences are reasonable, it was for the jury, not the court, to determine what may have occurred." *United States v. Grissom*, 44 F.3d 1507, 1510 (10th Cir. 1995) (internal citations omitted).

The CCA found that the jury was correctly instructed that Barajas must have had knowledge that Ms. Fresquez intended to commit a crime in order to convict him.  The Court further found that there was direct and circumstantial evidence that Barajas had knowledge that Ms. Fresquez intended to commit the crimes.[2]  *Barajas I* at 5.  The evidence presented at trial, viewed in the state's favor, was sufficient to prove that Applicant possessed the requisite knowledge.  This finding is consistent with federal standards.  *See Barbee v. Calbone*, 15 F. App'x 752 (10th Cir. 2001) (holding evidence was sufficient to show driver had knowledge of crimes where defendant admitted that he was with his co-defendant from dusk to 10:00 p.m. and the victim identified the co-defendant as the robber).  Consequently, Applicant has not shown that the Colorado Court's application of the *Jackson* standard was unreasonable.  *Accord Barbee*, *supra*.

---

[2]  Under Colorado law, a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such a nature or that such circumstances exist.  Colo. Rev. Stat. § 18–1–501(6).  The mental state of knowingly is a subjective rather than an objective standard.  *See People v. DeHerrera*, 697 P.2d 734, 741 (Colo. 1985).

Nor has he shown that it based its decision on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, he is not entitled to habeas relief with respect to this claim.

Applicant next claims that there was insufficient evidence to support his conviction as a habitual offender.  In its review of this claim on direct review, the CCA held as follows:

### IV. Habitual Criminal

Defendant contends that the trial court erred when it found that he had been convicted of five prior felonies because there was insufficient evidence to prove his identity in those cases.  We disagree.

In a habitual criminal action, the prosecution bears the burden of proving beyond a reasonable doubt that the accused is the person named in the prior convictions.

Here, the habitual criminal counts were based on allegations that defendant had been separately convicted of five felonies.  During the habitual criminal trial, the prosecution introduced certified court records of all five convictions, a Department of Corrections (DOC) pen pack with three mug shots of defendant, his social security number, and certified copies of the mittimuses from the prior felonies.  In addition, a fingerprint technician testified that she had taken defendant's fingerprints and compared them to fingerprint cards in the DOC pen pack and booking records from Denver and Jefferson Counties, and that all the fingerprints she compared belonged to defendant.

We conclude this evidence was sufficient to establish beyond a reasonable doubt that defendant was the person convicted in all five of the prior cases.

*Barajas I*, at 8-9 (some citations omitted).  Docket No. 11-4 at 10-11.

Again, the Court's sole inquiry is whether the state court applied *Jackson* unreasonably.  Applicant argues that the "pen-pack" from the CDOC was insufficient to prove his identity beyond a reasonable doubt because the pen-pack contained only

fingerprint records for two parole violations but not the original offenses.  This argument is without merit.

There is no indication that the Supreme Court of the United States has made a holding or pronouncement that has clearly established the proof necessary to convict a defendant as an habitual offender.  Clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.  *See Wright v. Van Patten*, 522 U.S. 120 (2008) (*per curiam*) (reversing a grant of habeas relief under the rationale that no Supreme Court decision squarely addressed the issue or clearly established that law from another context should apply on the facts *sub judice*).  In the absence of such a holding, "it cannot be said that the state court unreasonably applied clearly established Federal law."  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).  Consequently, Applicant is not entitled to habeas relief as to this claim.  *Accord Hargrove v. Warden Pa. State Penitentiary*, 2010 WL 2545197 (W.D. La. 2010) (finding that, although petitioner's adjudication as a second-felony offender based only on having the same name as on the prior conviction was not adequate under Louisiana law, petitioner had failed to show that he was entitled federal habeas corpus relief because the determination was not an unreasonable application of clearly established federal law).  *See also People v. Benton,* 829 P.2d 451, 454-455 (Colo. App. 1991) (holding that lack of fingerprint record for the person incarcerated in 1982 did not render the evidence insufficient to prove that defendant was the person convicted in 1982; evidence of fingerprints after parole

16

revocation was sufficient to allow a reasonable fact finder to determine, beyond a

reasonable doubt, that the defendant was the same person who had been convicted of

the three previous felonies upon which the habitual criminal charges were based).

### 2.  Jury Instructions

Barajas' second claim is that the state trial court violated his Fourteenth

Amendment due process rights when it gave the jury an instruction regarding complicity

that erroneously instructed it to convict Barajas if it believed he committed "all or part of"

the offense.  The federal Constitution imposes constraints upon the state's authority to

convict a person of state-defined criminal offenses.  In this regard, it is well-settled that

"the Due Process Clause [of the Fourteenth Amendment] protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to

constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364

(1970).  Thus, a jury instruction that omits or materially misstates an essential element

of an offense as defined by state law and which a reasonable jury could construe in the

context of the charge to relieve the state of its obligation to prove facts constituting

every element of the offense beyond a reasonable doubt violates the defendant's

federal due process rights.  *Francis v. Franklin*, 471 U.S. 307, 315-16 (1985).

The mere fact that an instruction was allegedly incorrect under state law is not a

basis for habeas relief.  *Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6 (1983).  The

question is "whether the ailing instruction by itself so infected the entire trial that the

resulting conviction violates due process."  *Cupp v. Naughten*, 414 U.S. 141, 147

(1973).  It is well established that the instruction may not be judged in artificial isolation,

but must be considered in the context of the instructions as a whole and the trial record.

*Id.* at 147 (internal citations omitted).  In reviewing an ambiguous instruction, the court must inquire whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.  *Boyde v. California*, 494 U.S. 370, 380 (1990).  The standard is whether there was a reasonable likelihood that the jury did misinterpret the instruction, not whether the jury "could have" misinterpreted the instruction, *Tyler v. Cain*, 533 U.S. 656, 659 (2001), and is more deferential than plain error review.  *Engle v. Isaac*, 456 U.S. 107, 134-35 (1982).

A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred.  *See Calderon v. Coleman*, 525 U.S. 141, 146-47 (1998).  If an error is found, the court must apply the "harmless error" rule as set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  In *Brecht*, the Supreme Court held that habeas relief is available only where the error "had substantial and injurious effect or influence in determining the jury's verdict."  *Id.* at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  To meet this standard, there must be more than the "reasonable possibility" that the error contributed to the jury's determination of guilt. *Brecht*, 507 U.S. at 637.  *See also Fry v. Pliler*, 551 U.S. 112 (2007).  It is only when a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict that an error is not harmless.  *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Applicant was convicted of theft and robbery as an accomplice of the female purse snatcher.  Under Colorado principles of complicity, a person is legally accountable for the actions of another if, "with the intent to promote or facilitate the

18

commission of the offense, he or she aids, abets, advises, or encourages the other person in . . . committing the offense." Colo. Rev. Stat. § 18-1-603. There is a dual mental state requirement of the complicitor that must be proven before he or she can be legally accountable for the offense of another. "First, the complicitor must have the culpable mental state required for the underlying crime committed by the principal. Second, the complicitor must intend that his own conduct promote or facilitate the commission of the crime committed by the principal." *Bogdanov v. People*, 941 P.2d 247, 251 (Colo.), *amended*, 955 P.2d 997 (Colo. 1997), *disapproved of on other grounds by Griego v. People*, 19 P.3d 1 (Colo. 2001). Under a complicity theory, "it is not necessary that any single person commit all the elements of the underlying offense. It is only necessary that the acts of the complicitor and the other actor or actors, together, constitute all acts necessary to complete the underlying offense." *People v. Elie*, 148 P.3d 359, 365 (Colo. App. 2006).

In its review of this claim on direct appeal, the CCA held as follows:

### III. Jury Instruction

Defendant next contends that reversal is required because the complicity instruction erroneously stated that he could be guilty as a complicitor if another person committed "all or part" of the offense of robbery or theft from an at-risk adult. We disagree.

We review for plain error because defendant did not object to the instruction at trial. We reverse for plain error only when an error is obvious and substantial and so undermines the fundamental fairness of the trial that serious doubt is cast on the reliability of the judgment of conviction.

To warrant reversal under a plain error standard, a defendant must demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the instruction contributed to his conviction.

Here, the complicity instruction given by the court essentially tracked the language of the pattern jury instructions, and stated:

A person is guilty of an offense committed by another person if he is a complicitor.  To be guilty as a complicitor, the following must be established beyond a reasonable doubt:

1.   A crime must have been committed.

2.   Another person must have committed all or part of the crime.

3.   The defendant must have had knowledge that the other person intended to commit all or part of the crime.

4.   The defendant must have had the intent to promote or facilitate the commission of the crime.

5.   The defendant must have aided, abetted, advised, or encouraged the other person in the commission or planning of the crime.

In *Bogdanov v. People*, 941 P.2d 247, 256 (Colo.), amended, 955 P.2d 997 (Colo. 1997), the supreme court held that where, as here, only one person commits the essential elements of the principal crime on which a defendant's complicity charge is predicated, the court should not instruct the jury that the defendant may be found guilty if it finds that the other person committed "all or part" of the crime.  However, the court also concluded that the inclusion of the phrase "all or part" was not plain error.  *Bogdanov*, 941 P.2d at 256.

Here, the evidence was overwhelming that the cohort committed and intended to commit the crimes and that defendant knew she had that intent, and aided in the commission of the crimes.  Thus, although it was error to include the phrase "all or part," we conclude that the error did not undermine the fundamental fairness of the trial or cast serious doubt on the judgment of conviction.  Accordingly, reversal is not required.

*Barajas I*, at 6-8.  Docket No. 11-4 at 8-10.

The question this Court must answer under AEDPA is whether the determination

of the CCA that the error did not undermine the fundamental fairness of the trial or cast

serious doubt on the judgment of conviction was an unreasonable application of clearly established federal law. *See* § 2254(d)(1). The Court finds that it was not.

Applicant appears to argue that, if he was convicted as a complicitor, rather than as a principal, a reasonable jury could not have determined that he aided and abetted a co-defendant who only committed part of the offense. However, the evidence submitted at trial showed that Ms. Fresquez committed all of the elements of theft and robbery. If Ms. Fresquez committed all of the elements of the crimes, the defect in the complicity instruction was harmless. *See, e.g., Bogdanov*, 941 P.2d at 256 (where co-defendant committed all of the elements of the principal offense, use of the defective complicity instruction was superfluous and not plain error).

Under *Griffin v. United States*, 502 U.S. 46, 56 (1991), an applicant's conviction is constitutional if the evidence was sufficient to establish guilt either as a principal or a complicitor. Even if the Court were to consider the alleged erroneous instruction separate from the "all or part" language, the jury was instructed to determine whether Ms. Fresquez intended to commit the underlying offenses and intended to cause injury to the victim. The jury also was instructed to determine whether Applicant had the intent to promote or facilitate the crimes and aid, abet, advise, or encourage Ms. Fresquez to commit the crimes. In finding him guilty, the jury determined that the prosecution had proved each of these elements. Accordingly, the trial court's inclusion of the "all or part" language in the complicity instructions did not deprive Applicant of due process or a fair trial. Nor did the alleged erroneous instruction by itself so infect the entire trial that the resulting conviction violates due process. *Cf. People v. Osborne*, 973 P.2d 666 (Colo. App. 1998) (holding that, although inclusion of "all or part"

21

language in complicity instruction was error, it was not plain error since third person

committed offense entirely and inclusion of "all or part" language was superfluous).

Ample evidence supports the conclusion that Applicant had knowledge that Ms.

Fresquez intended to and did commit the principal crimes. Thus, the incorrect

instruction did not substantially influence the outcome of the trial. Moreover, the CCA's

decision is not contrary to, or an unreasonable application of, established Supreme

Court precedent. *Cf. Longwell v. Arnold*, 371 F. App'x 582 (6th Cir. 2010) (finding no

basis for habeas relief where element of intent was missing from the challenged

complicity instruction but the charge as a whole sufficiently apprised the jury regarding

defendant's intent). Consequently, Applicant fails to assert a claim for federal habeas

relief as to his second claim and it is denied for lack of merit. *Accord Hamlin v.

Zavaras*, No. 11-01386, 2012 WL 3129192 (D. Colo. 2012) (no basis for habeas relief

based on "all or part" language in jury instructions in Colorado for complicity), *appeal

dismissed*, 531 F. App'x 840 (10th Cir. 2013); *Lee v. Ortiz*, No. 06-cv-00705-LTB-MEH,

2007 WL 2261651 (D. Colo. Aug. 6, 2007), *appeal dismissed*, 271 F. App'x 739 (10th

Cir. 2008) (same).

### 3.  Ineffective Assistance of Counsel

In his last two claims, Applicant asserts claims of ineffective assistance of

counsel. The Sixth Amendment guarantees criminal defendants effective assistance of

counsel. The Supreme Court has formulated a two-part test for determining whether

counsel rendered constitutionally ineffective assistance: 1) counsel's performance was

unreasonable and 2) counsel's unreasonable performance actually prejudiced the

defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

22

The first prong of the *Strickland* test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment. *Id*. at 688. The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair and unreliable. *Id*. at 689. A defendant is not entitled to relief unless he makes both showings. *Id*. at 687. Moreover, "[a] court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Id*. at 694. The *Strickland* standard applies equally to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2002). Colorado applies the same test for ineffective assistance of counsel claims. *See Davis v. People*, 871 P.2d 769, 772-79 (Colo. 1994).

With regard to the first criterion, counsel's effectiveness is measured objectively considering all the circumstances. *Strickland*, 466 U.S. at 687-88. In evaluating counsel's performance, the Court must "indulge a strong presumption" that counsel's challenged actions might be considered sound strategy under the circumstances. *Id*. at 689. Thus, counsel's strategic choices will not be second guessed by post hoc determinations that a different trial strategy would have fared better. The relevant inquiry is not whether counsel was prudent, appropriate, or perfect; rather, the focus is simply to ensure that the defendant received a fundamentally fair trial. *Id*.

With respect to the second criterion, prejudice, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the

23

proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.  Prejudice must be evaluated in light of the totality of the evidence presented at trial, and a verdict only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.

In analyzing Applicant's claims under the two-part test announced in *Strickland*, this Court must apply the standards set forth in 28 U.S.C. § 2254(e) concerning the presumption of correctness applicable to state court factual findings.  The question of effectiveness of counsel under *Strickland* is a mixed question of law and fact; it requires the application of a legal standard to the historical fact determinations.  In this regard, a state court's finding that counsel had a trial strategy is a finding of fact to which the presumption applies.  *Bryan v. Mullin*, 335 F.3d 1207, 1221 n. 17 (10th Cir. 2003).  Likewise, a state court's determination that a decision was a tactical one is a finding of fact.  *Id*.

The Supreme Court recently reiterated the difficulty of prevailing on an ineffectiveness claim on habeas review.

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law."  A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotations and citations

omitted).  The Court further instructed:

> Surmounting *Strickland's* high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105 (internal quotations and citations omitted).

In his first ineffective assistance claim, Petitioner asserts that trial counsel was

ineffective by failing to object to the "all or part of the crime" language contained in the

complicity instruction given to the jury.  In its review of this claim, the CCA held as

follows.

> . . . We have conducted a thorough examination of the record . . . and we have concluded that the jury instruction given here -- though erroneous -- had no effect on the judgment of conviction.  Accordingly, defendant's claim of ineffective assistance of counsel claim fails under our separate, fact-specific *Strickland* analysis.

. . .

As the division noted in the direct appeal, the evidence presented at trial by the prosecution was overwhelming that defendant knew the principal intended to commit the robbery, and that he aided in the commission of the crime.

Indeed, the evidence showed that defendant drove the getaway vehicle in two purse snatchings. In the first, defendant's female cohort stole an elderly woman's purse from her shopping cart. The cohort then entered a van defendant was driving, which drove away at a high rate of speed. Later that same day, the same cohort grabbed another victim's purse in the parking lot of a store, and a struggle for the purse ensued. The victim's purse strap broke, and the cohort took the purse and ran around the back of a waiting van that was being driven by defendant. The victim chased the cohort, who then threw the purse into the van through the driver's side window. The victim reached in the window to grab her purse, saw defendant, "stared him right in the eye," and said, "Give me back my purse." The victim testified that, instead of complying, defendant "opened the car door and slammed [her] in the face and the side with [the car door] - or in the front of [her] side." The victim explained that defendant then accelerated "and [she] was actually hanging on to that [door] frame."

Based on this factual review, we conclude that the evidence of defendant's complicity was overwhelming, and that defendant failed to establish any prejudice resulting from the erroneous jury instruction.

*Barajas II*, pp. 3, 5-6. Docket No. 11-10 at 5, 7-8.

For purposes of this Court's review, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Harrington*, 562 U.S. at 105. Thus, this habeas petition can only be granted if the state courts' decision that he did not receive ineffective assistance of counsel represents an "unreasonable," not simply incorrect or erroneous, application of federal law.

As stated above, the evidence at trial showed that Ms. Fresquez committed all of the elements necessary for the theft and robbery convictions. In this situation, use of

the "defective" complicity instruction was superfluous.  *See Lee v. Watkins*, No. 03-MK-72 (PAC), 2005 WL 2991730 (D. Colo. Nov. 7, 2005).  Thus, under Colorado law, there is no reason to conclude that the outcome of Applicant's trial would have been different had his counsel objected to the "all or part of" language.  Accordingly, the CCA found that Applicant was not prejudiced by his counsel's failure to have objected to the instruction.

Petitioner cites no Supreme Court case granting relief under equivalent circumstances.  Nor has this Court discovered any relevant Supreme Court precedent that leads to a conclusion that the CCA's determination that Applicant failed to show prejudice with regard to this claim is an unreasonable application of clearly established federal law.  *Harrington*, 562 U.S. at 105.  Nor has he shown that this determination is based on an unreasonable application of the facts before the state court. Consequently, he has failed to show that he is entitled to habeas relief with respect to this claim.

In his second ineffective assistance claim, Petitioner asserts that trial counsel was ineffective by failing to demand a jury trial with regard to the habitual criminal charges.  In its review of this claim, the CCA held as follows:

> We also reject defendant's contention that his trial counsel was ineffective by failing to demand a jury trial on the habitual criminal charges, and that his appellate counsel was ineffective by not raising this issue in his direct appeal.

> Under section 18-1.3-803(1), C.R.S. 2012, the trial court decides a defendant's habitual criminal charges, not a jury.  This is true notwithstanding the holdings of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).

27

Defendant's reliance on *Sullivan v. Louisiana*, 508 U.S. 275 (1993), is misplaced.  Sullivan addressed an erroneous instruction regarding the prosecution's burden to prove every element of a charged offense beyond a reasonable doubt at trial.  *Id*. at 277-78.  Accordingly, *Sullivan* does not apply here.

We therefore conclude the postconviction court did not err in denying defendant's ineffective assistance of counsel claims without a hearing and without appointing counsel.

*Barajas II*, pp. 3, 5-6.  Docket No. 11-10 at 5, 7-8.

Under Colorado law, an adjudication of habitual criminality is not a substantive

offense.

A trial that involves an adjudication of habitual criminality is bifurcated and proceeds in two phases.  In the information, the district attorney lists the substantive offenses with which the defendant is currently charged, and also brings an additional count for each prior conviction that will later be used to adjudicate the defendant a habitual criminal.  The first phase of the trial determines whether the defendant is guilty of the substantive offenses with which he is charged.  If the defendant is found guilty, the trial proceeds to the second, or sentencing, phase.  During this phase, the prosecution  seeks to prove that the defendant was previously convicted of the prior crimes listed in the indictment.  If the prosecutor has met the burden, the trial judge will adjudicate the defendant a habitual criminal and impose an enhanced sentence.  If the prosecutor has not met the burden, the defendant is sentenced according to the statutory provisions for sentencing on the substantive crimes.  The habitual adjudication is only one component of the entire process of conviction.  Its purpose is to direct the court as to the sentence that should be imposed.

*People v. Hampton,* 876 P.2d 1236, 1241 (Colo. 1994).

Applicant argues that the CCA's decision is contrary to the subsequent ruling in

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the Supreme Court held that a

fact that increases the penalty for a crime beyond the prescribed statutory maximum

must be submitted to a jury and proved beyond a reasonable doubt.  However, the

*Apprendi* Court specifically excepted from its ruling "the fact of a prior conviction," which

is the relevant determination in a repeat offender enhancement.  *Apprendi*, 530 U.S. at

490.  In Colorado, determination of whether a defendant is a repeat offender or habitual

criminal rests solely upon whether the defendant has prior convictions.  Thus, the ruling

in *Apprendi* is not applicable to the repeat offender sentence enhancer in § 18-1.3-

803(4)(b).  *Accord Gilmore v. Dunbar*, Civil Action No. 05-cv-01841-MSK-MEH, 2008

WL 544737 (D. Colo. Feb. 26, 2008).  Consequently, the CCA's determination was not

contrary to, or an unreasonable application of, Supreme Court precedent.

## IV.  CONCLUSION

Adjudication of Applicant's claims by the Colorado state courts did not result in a

conclusion opposite to that reached  by the Supreme Court on a question of law,

unreasonably apply a governing legal principle to the facts of Applicant's case, or result

in an unreasonable determination of facts in light of the evidence presented.

Accordingly, it is

**ORDERED** that the Amended Application for Writ of Habeas Corpus pursuant to

28 U.S.C. § 2254 [Docket No. 8] is **DENIED**.


DATED July 29, 2015.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

29